MONTGOMERY ET AL. *v.* SOUTHERN SURETY COMPANY OF IOWA ET AL.

[No. 12,951. Filed April 20, 1928. Rehearing denied Oct. 24, 1928. Transfer denied April 26, 1933.]

*Joseph H. Shea* and *Owen S. Boling,* for appellants.

*Slaymaker, Turner, Merrell, Adams & Locke,* for appellees.

NICHOLS, J.—Action by appellants against appellees

upon a contract executed by them with the State of Indiana, to recover for material furnished in the construction of certain state road projects.

By a second paragraph of complaint appellants sought to recover against each of the appellees for goods and merchandise furnished them at their special instance and request.

The original state contract for the construction of these projects was awarded to the Hobbs-Davis Construction Company. It defaulted before entering upon the work and appellee Southern Surety Company, as surety on the Davis Construction Company bond, became liable for the carrying out of the contract. Subsequent to such default, the Surety Company entered into a direct contract with the state for the construction of the same projects and then entered into a contract with appellees Pfizenmayer & Harmon to execute the work, and they gave bond to the Surety Company for the faithful execution of their contract, and appellees Meredith and Pfizenmayer, Sr., signed such bond as sureties.

As a part of the second contract, the plans, profiles, specifications and drawings for the improvement and the bid and bond for performance according to the terms of the Davis Construction Company contract, and for the payment of all lawful claims of subcontractors, materialmen and laborers, for labor performed and material furnished in carrying forward, completing and performing said contract, were included, the Surety Company agreeing and assenting that the undertaking should be for the benefit of any materialmen or laborers having just claim.

A trial by the court resulted in a finding for appellants against appellees Harmon, Henry Pfizenmayer, Jr., and Meredith, that there is due appellants from said appellees, $2,086.44, and a finding for appellees Southern Surety Company of Iowa, and Henry Pfizenmayer, Sr.,

and that appellants take nothing by their complaint as to them.

This appeal is from the judgment on this finding. The overruling of appellants' motion for a new trial is the only error assigned and relied on for reversal.

Appellants complain that the court erred in admitting in evidence, over their objection, the contract between appellee Surety Company and appellees Pfizenmayer & Harmon for the construction of the improvement involved and the bond executed by said appellees Pfizenmayer & Harmon to the Surety Company to secure the performance of their contract. But we are not in harmony with appellants' contention in this regard. One of the averments of the complaint was to the effect that said appellees Pfizenmayer & Harmon were engaged in the construction of the improvement as the agents and servants of appellee Surety Company. Appellee Surety Company's answer to the complaint was a general denial, and certainly the subcontract between Pfizenmayer & Harmon and the Surety Company, together with the bond to secure the performance thereof, was competent evidence to disprove the allegation of the complaint that appellees Pfizenmayer & Harmon were constructing the work as the agents and servants of the Surety Company. But even if the admission of such evidence were error, as we view this case we do not see that appellants were harmed thereby.

The Davis Construction Company having defaulted on the original contract, the Surety Company became liable for the performance of the contract because of the bond which they had executed to secure its performance. Because of such liability the Surety Company entered into a contract for the construction of such improvement making their bond executed to secure the performance of the original contract a part of the second contract. This bond was executed in conformity with the requirements

of the provision of the statute, being Sec. 8285, Burns 1926, Acts 1919, p. 127, ch. 53, sec. 18 of the act. This section contains the form of the bond executed by appellee to secure the performance of the original contract.

We cannot agree that appellee Surety Company, after becoming liable on its bond, can by the execution of a new contract making the terms and conditions of the bond a part thereof, avoid liability for the payment of "all lawful claims of subcontractors, materialmen and laborers, for labor performed and material furnished in the carrying forward, performing and completing of said contract." As provided in such statutory bond, it being further provided in harmony with the statute, that the Surety Company agrees and assents "that this undertaking shall be for the benefit of any materialmen or laborers having a just claim, as well as for the obligee."

Appellee Surety Company argues that appellants' action was not upon the bond. But such action was upon the contract made by the Surety Company with the state, of which contract the bond was part, the same as if therein fully set forth.

We are constrained to hold that the Surety Company, by its contract with the state of which the conditions of its bond are a part, is liable for the lawful claims of subcontractors, materialmen and laborers, for labor performed and material furnished in the carrying forward, performing and completing of their contract.

Appellee Surety Company cites *Miller* v. *State ex rel.* (1905), 35 Ind. App. 379, 74 N. E. 260, to sustain its contention that there is no liability on the part of the principal contractor for any indebtedness incurred by the subcontractor in connection with the carrying on of the work which has been sub-let. But that authority, as well as others cited by appellee, was before the enactment of the statute of 1919 above mentioned. In all

probability the decisions in the cases cited by appellee Surety Company suggested the remedy enacted in 1919.

But appellee Surety Company well suggests that not everything that is furnished to a contractor who is engaged in the construction of a highway, can be the basis of a claim under his bond. Appellants have not set out the bill of particulars which constitutes the basis of their claim against the Surety Company nor its substance, and appellee states that such bill of particulars is too voluminous to set out in whole, as it consists of charges for hundreds of items bearing date from October 30, 1923, to October 30, 1924, which it classifies in a general way as follows: (a) Repair parts for equipment, Ford parts described by number, bolts, nuts, set screws, tire casings and inner tubes, bearings, skid chains, fan belts, radiators, brakelining, gaskets, spark plugs, washers, cylinder heads, gears, bushings, fenders, connecting rods, springs, piston rings, asbestos, timers and rollers, and many other miscellaneous parts.

(b) Items of labor, all of which was performed by appellants in repairing the equipment owned by Pfizenmayer & Harmon, including trucks, Ford cars, mixers, tractors and tools.

(c) Miscellaneous items such as telephone calls, gas and oil, alcohol, semetol and shellac.

Appellants have not challenged appellees' list and classification. We assume therefore that they are substantially correct.

It appears by the evidence that none of the repair parts mentioned above, was furnished to the Surety Company, that all of them were furnished to Pfizenmayer & Harmon, and that the Surety Company had no interest whatever in any of the equipment for which the repair parts were furnished and on which the repairs were made. It has been generally held that equipment sold to a contractor, even though it be used in the construction of the im-

provement, is not such material as comes within the meaning of the bond and statute, nor are repair parts for equipment nor repair work thereon, such material or labor as comes within the contemplation of the bond. Such equipment necessarily is a part of the capital of the contractor by the use of which he performs the work, not only on the improvement then in hand but as well the work on other improvements both theretofore and thereafter. It does not become a part of the project. In *Southern Surety Co.* v. *National Lumber Co.* (1920), 73 Ind. App. 592, 122 N. E. 686, this court, speaking by Enloe, J., held that lumber used as an appliance is not such material as is furnished in the construction of the work, and was not the basis for a claim against the Surety Company upon its bond. Numerous authorities are there cited to sustain the decision of the court. The principle here involved is the same. The purpose of the statute is to furnish protection to those who furnish material or labor which enters into or becomes a part of, or is naturally consumed in or about the completion of the work involved. Other authorities to the same effect are: *City of Alpena* v. *Title Guaranty Co.* (1909), 159 Mich. 329, 123 N. W. 1126; *Title Guaranty, etc., Co.* v. *State ex rel.* (1916), 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19; *Standard Boiler Works* v. *National Surety Co.* (1912), 71 Wash. 28, 127 Pac. 573, 43 L. R. A. (N. S.) 162.

None of the items above entered into and became a part of the work, or were consumed in its completion, unless it might be said that items such as oil, gasoline, shellac and telephone calls might be so consumed. As to this we are not informed as there is no evidence stating the purpose for which these items were used, and the court by its general finding, has found that they were not used in the construction of the work involved. Had the court found otherwise the circum-

stances might justify an inference by the court that would sustain its finding.

While we hold that the Surety Company would be liable for such material furnished to the subcontractors as entered into and became a part of the work, or was consumed in the construction, we are compelled to hold that the items mentioned in appellants' bill of particulars are not such as will constitute a lawful claim against appellee Surety Company under its contract.

Judgment affirmed.