**FOSHEE et al. v. DAOUST
CONST. CO. et al.**

No. 10140.

United States Court of Appeals
Seventh Circuit.

Heard Sept. 21, 1950.

Decided Nov. 6, 1950.

Rehearing Denied Dec. 2, 1950.

24

J. A. Bruggeman, Phil M. McNagny, F. E. Zollars, Barrett, Barrett & McNagny, all of Fort Wayne, Ind., for appellant.

Arthur W. Parry, Merl A. Barns, Parry & Barns, Reed, Cleland, Eggeman & Torborg, all of Fort Wayne, Ind., for appellees.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff's decedent, William R. Foshee, on the 7th day of October, 1947, was killed as a result of a collision between the engine of a passenger train of the Pennsylvania Railroad Company and a tournapull owned and operated by the defendant, Daoust Construction Company. The decedent at the time of the collision was an assistant road foreman of engines and was riding in the engineer's cab. The collision took place at a highway intersection in Allen County, Indiana, while the train was moving in a southerly direction and the tournapull was being driven by the defendant in a westerly direction. The Daoust Construction Company at the time of the collision was engaged in highway construction under a contract existing between it and the State of Indiana. The company was required by the State of Indiana to furnish a surety bond and this was furnished by the defendant, United States Fidelity and Guaranty Company.

Two claims purportedly were stated in the complaint. The allegations, however, are so commingled that we find some difficulty in differentiating the allegations relative to the dual actions sought to be stated. We accept the theory about which there appears to be no disagreement, that one claim was stated under the wrongful death statute of the State of Indiana, and the second claim, against the Daoust Construction Company and its surety, United States Fidelity and Guaranty Company, was stated in the name of the State of Indiana on the relation of the administratrix, to recover damages for decedent's death on the construction contract and the contractor's surety.

The defendants answered the complaint insofar as it stated a claim under the wrongful death statute, and this claim remains pending. They moved to dismiss the claim sought to be predicated upon the construction contract and the surety bond because of a failure to state a claim in this respect. The court sustained this motion, found there was no just reason for delay in the entry of its judgment on its order of dismissal, and entered the judgment from which this appeal comes.

Obviously, the primary issue here arises from the court's judgment of dismissal for failure to state a claim on the construction contract and the surety bond. More specifically, the question is whether the Daoust Construction Company by reason of its contract with the State of Indiana owed any duty to plaintiff's decedent and, if so, was the failure to discharge such duty the proximate cause of the decedent's death? If this question be answered in the affirmative, did the bond given by the United States Fidelity and Guaranty Company cover such breach of contract?

Insofar as the complaint relates to the claim now under consideration, it rests *in toto* upon a single phrase of the contract, that is, the duty of the contractor "to provide necessary watchmen for protecting, regulating and directing traffic," and that "The Daoust Construction Company was thereby required to provide the necessary watchmen at said crossing for protecting, regulating and directing traffic and that the defendant surety would be responsible for any failure to provide such watchmen for all damages resulting therefrom." And the complaint further alleges that the "death of the decedent proximately resulted from the failure of said contractor to provide such watchman."

We need not cite or discuss cases relied upon by the plaintiff to the effect

that in passing upon a motion to dismiss the court will take as true all facts well pleaded and will not dismiss unless it appears that the plaintiff is not entitled to relief under any state of facts which could be proven. It is equally familiar doctrine that if it clearly appears from the complaint that on the facts pleaded the plaintiff will not be entitled to any relief, a motion to dismiss the claim is the proper procedure and should be sustained. Rule 12 (b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A. See Publicity Building Realty Corporation v. Hannegan, 8 Cir., 139 F.2d 583, 587.

▆ Plaintiff is in the untenable position of resting her claim upon a single phrase plucked from the contract and ignoring all other provisions which throw light upon and demonstrate what was meant by the phrase relied upon, and this notwithstanding that the contract and the bond were attached to and by specific allegation made a part of the complaint. A copy of a written instrument filed as an exhibit to a pleading is a part thereof for all purposes and may properly be considered in determining the sufficiency thereof. Rule 10(c), Federal Rules of Civil Procedure. Andrews v. Equitable Life Assurance Soc., 7 Cir., 124 F.2d 788, 789; Aralac, Inc. v. Hat Corporation of America, 3 Cir., 166 F.2d 286, 289, note 2. And it has been held that where the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom. Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629, 631; Simmons v. Peavy-Welsh Lumber Co., 5 Cir., 113 F.2d 812. The Indiana courts have frequently held that a single sentence may not be lifted from a paragraph of a contract and isolated for the purpose of construction, and that its true meaning must be determined from a consideration of the paragraph as a whole. Sindlinger v. Dept. of Financial Institutions, 210 Ind. 83, 105, 199 N.E. 715; Bojarski v. Ballard, 113 Ind.App. 6, 9, 44 N.E.2d 200; Hoverstock v. Darrow, 94 Ind.App. 83, 87, 179 N.E. 790.

Thus, it becomes evident that plaintiff is not entitled to have the phrase specifically pleaded and upon which she relies considered merely in its isolated form. The meaning to be ascribed to that phrase must be determined from the contract as a whole, and particularly from the paragraph of the contract from which the phrase is plucked. The phrase in question is found in a provision entitled "Maintaining Traffic," which taken as a whole so plainly and palpably, so we think, refutes plaintiff's theory of liability that it appears pertinent to set it forth in full.

"The Contractor shall arrange the work on this contract in such a manner that U. S. No. 30 at Station 35/56.7, S.R. No. 3 at Station 123/68.8, and U. S. No. 27 at Station 162/47.4 will be left open for two (2) lane traffic at all times.

"The Contractor shall arrange the work in such a manner that S.R. No. 37 at the end of the project will be left open for two (2) lane traffic at all times, except that during the construction of Structure No. 114, he will be permitted to maintain one (1) lane traffic. The Contractor shall prosecute the construction of Structure No. 114 in such a manner that traffic on S.R. No. 37 will be limited to one (1) lane traffic for the shortest period of time possible.

"The Contractor shall prosecute the work in such a manner that S.R. No. 427 at Station 181/38.7 will be closed to traffic for the shortest period of time possible.

"The Contractor shall, except as hereinafter specified, furnish and maintain sufficient signs, lights, flares, and barricades, and provide necessary watchmen for protecting, regulating and directing traffic as well as for protecting the work both night and day, during the construction. Lights shall be maintained on all equipment, materials and structures under construction, which are less than eleven (11) feet from the edge of a traveled surface."

▆ The contractor was required to "furnish and maintain sufficient signs, lights, flares and barricades, and provide necessary watchmen for protecting, regulating and directing traffic." Plaintiff would have us construe the word "traffic"

to include that of the Pennsylvania Railroad in which the deceased was engaged or of which he was a part. In our view, this word is not susceptible of such construction, and this irrespective of the other portions of the provision of which it is a part. Obviously, if the contractor was required to provide "watchmen" for protecting railroad traffic, it was likewise obligated to furnish "signs, lights, flares, and barricades" for the same purpose. A mere statement of the contractual requirements dispels any thought that it had any connection with or was related in any way to railroad traffic. It is inconceivable that the contractor and the State of Indiana entered into a contract by which the former was required to regulate and direct railroad traffic by signs, lights, flares, barricades, watchmen, or in any other manner. Even if the contract had required that a watchman be placed at a railroad crossing, which it does not, still it would obviously have been for the purpose of protecting highway and not railroad traffic. More than that, we need not guess or speculate as to the "traffic" to be protected because the provision when read in its entirety specifically defines such traffic. Some highways were to be left open "for two (2) lane traffic at all times," others for "one (1) lane traffic," and one highway was to be "closed to traffic for the shortest period of time possible."

The District Court in a memorandum opinion stated: "The requirement to provide watchmen is contained in a paragraph of the contract which relates to traffic over certain public highways that intersect the highway under construction. No mention is made at all of railroad traffic. Accordingly when the requirement to provide watchmen in regard to traffic is considered in its context, it is apparent that the requirement cannot be extended to include a watchman for traffic over railroad tracks which also intersect the highway under construction."

With this conclusion we agree, and in view of the authorities heretofore cited, the plain, unambiguous requirement of the contract must be given effect, notwith-standing the naked allegation of the complaint that there was a contractual duty to maintain a watchman at the railroad crossing for the purpose of protecting railroad traffic.

■ ■ There being no claim stated on the contract, it must follow that no claim was stated on the bond given to secure its performance. It is not amiss, however, briefly to refer to the bond and the terms of the Indiana statute under which it was furnished, as well as some of the decisions relating thereto, for the purpose not only of showing that there was no liability on the bond but as a further indication that the contract was not made for the benefit of the public, including plaintiff's decedent. The bond was given in conformity with the requirements of Sec. 36-112, Burns' Indiana Statutes, 1949 Replacement, and was written in the exact form set forth in the statute. The sole coverage required by the statute was for (a) "the faithful performance of the work," and (b) "the payment * * * for all labor performed or materials furnished or other services rendered in the construction of the highway." It appears obvious and it has been so held that the sole statutory object was to secure the construction and completion of a state highway contracted for, and, as an aid to assuring a ready supply of labor and materials for such construction and in fairness to those who furnished the same, a guaranty of pay for their contributions to the improvement. Montgomery v. Southern Surety Co., 96 Ind.App. 472, 476, 162 N.E. 31; State ex rel. Lawson v. Warren Br. Roads Co., 115 Ind.App. 452, 456–463, 59 N.E.2d 912; Ohio Oil Co. v. Fidelity & Deposit Co., 112 Ind.App. 452, 459, 42 N.E. 2d 406. And this same statutory provision was similarly construed by this court in Kosmos Portland Cement Co., Inc. v. D. A.Y. Const. Co., 7 Cir., 101 F.2d 893, 896.

It is, therefore, our conclusion that plaintiff failed to state a claim against the defendants on either the construction contract or the bond given to secure its performance, and that the judgment dismissing the complaint was proper. It is

Affirmed.