939 F.2d 463
 56 Fair Empl.Prac.Cas. 1093,
57 Empl. Prac. Dec. P 40,910, 20 Fed.R.Serv.3d 493
 Marie PERKINS and George Gaynor, Plaintiffs-Appellants,
v.
Marshall SILVERSTEIN, individually and in his capacity as an
administrator for the Cook County Forest Preserve District,
George Dunne, individually and in his capacity as a
President and Commissioner for the Cook County Forest
Preserve District, Steve Castans, individually and in his
capacity as Chief of the Cook County Forest Preserve
District Police Department, Chris Siragusa, individually and
in his capacity as a Lieutenant for the Cook County Forest
Preserve District, John Gabhart, individually and in his
capacity as an administrator for the Cook County Forest
Preserve District, James Gaughan, individually and in his
capacity as an administrator for the Cook County Forest
Preserve District, Lewis Kortas, individually and in his
capacity as a Sergeant for the Cook County Forest Preserve
District, Edward Connelly, individually and in his capacity
as a Lieutenant for the Cook County Forest Preserve
District, Bruce Quintos, individually and in his capacity as
a Lieutenant for the Cook County Forest Preserve District,
G. Palacios, individually and in his capacity as a
Lieutenant for the Cook County Forest Preserve District,
Sgt. Lawrence, individually and in his capacity as a
Sergeant for the Cook County Forest Preserve District, Greg
Kinczewski, individually and in his capacity as an attorney
for the Cook County Forest Preserve District and Cook County
Civil Service Commission, Defendants-Appellees.
 No. 90-1481.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 5, 1990.
Decided Aug. 7, 1991.
 
 1
 Peter J. O'Malley (argued), Chicago, Ill., for plaintiffs-appellants.
 
 
 2
 Alison E. O'Hara (argued), Office of Atty. Gen., Civ. Appeals Div., Lawrence J. Suffredin, R. Matthew Simon, Simon & Spitalli, Chicago, Ill., for defendant-appellee Marshall Silverstein.
 
 
 3
 Lawrence J. Suffredin, R. Matthew Simon, Simon & Spitalli, Chicago, Ill., for defendants-appellees George W. Dunne, Steve Castans, Chris Siragusa, John Gabhart, James Gaughan, Lewis Kortas, Edward Connelly, Bruce Quintos, G. Palacios, Sgt. Lawrence and Greg Kinczewski.
 
 
 4
 Iris E. Sholder, Office of State's Atty. of Cook County, Chicago, Ill., for defendant-appellee Cook County Civ. Service Com'n.
 
 
 5
 Before COFFEY and KANNE, Circuit Judges, and GRANT, Senior District Judge.*
 
 
 6
 GRANT, Senior District Judge.
 
 
 7
 Plaintiffs Marie Perkins and George Gaynor, former probationary police officers for the Cook County Forest Preserve District Police Department, filed a sixteen count employment discrimination suit against several members of the Department, defendants Castans, Siragusa, Kortas, Connelly, Quintos, Palacios and Lawrence, two members of the District's administration, defendants Gabhart and Gaughan, the President of the Forest Preserve District, George Dunne, the District's Chief Executive Officer, Marshall Silverstein, its attorney, Greg Kinczewski, and the Cook County Civil Service Commission alleging violations of Title VII, 42 U.S.C. Sec. 2000e et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq., the Civil Rights Act of 1871, 42 U.S.C. Secs. 1983, 1985, 1986, and unidentified state law. The district court dismissed the complaint in its entirety under Fed.R.Civ.P. 12(b)(1) and (6), and denied Perkins' belated motion to amend. This appeal followed. For the following reasons, we now affirm the judgment of the district court.
 
 I. PRIOR PROCEEDINGS
 
 8
 The Commission was named as a defendant in only two counts of the complaint, both alleging violations of procedural due process under state law. Plaintiffs alleged that they had a right under the Commission's Rules and Regulations to have the decisions to terminate their employment reviewed by the Commission, and that that right was violated. The Commission filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) contending that there was no provision for the type of administrative appeal which plaintiffs sought. The district court agreed, citing Ill.Rev.Stat. ch. 34, Sec. 1114 and Civil Service Commission Rule IX, Sec. 12 which give the appointing officer or the executive officer in the department in which an officer is employed the authority to discharge a probationary employee, with the consent of the Commission, "upon assigning in writing to [the] Commission his reasons therefor," and granted the Commission's motion to dismiss.
 
 
 9
 Taking their cue from the Commission, the individual defendants moved to dismiss the remaining counts of the complaint. On July 24, 1989, the district court granted that motion and issued a detailed memorandum opinion citing various defects in the complaint. It dismissed plaintiffs' Title VII and ADEA claims for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1), finding that plaintiffs had failed to allege compliance with the "jurisdictional prerequisites" of 42 U.S.C. Sec. 2000e-5(e) and (f)(1) and 29 U.S.C. Sec. 626(d). The Secs. 1983 and 1985 claims were found to be insufficient because plaintiffs failed to identify a protected property or liberty interest in their employment, Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976), or to allege facts, which if true, would establish the existence of a conspiracy among the defendants. Rodgers v. Lincoln Towing Service, Inc., 596 F.Supp. 13, 21 (N.D.Ill.1984), aff'd, 771 F.2d 194 (7th Cir.1985). Absent a viable claim under Sec. 1985, the court concluded there could be no claim under Sec. 1986. Williams v. St. Joseph Hospital, 629 F.2d 448, 452 (7th Cir.1980). Plaintiffs' pendent state due process claims were found to be equally lacking in that they failed to identify any basis for plaintiffs' assertion of a right to continued employment with the Department or to cite any statute, rule or regulation which would have entitled them to any process beyond that already received.
 
 
 10
 We concur with the district court with respect to all but the Title VII and ADEA claims, and find any error in the disposition of those claims to be harmless.
 
 II. STANDARD OF REVIEW
 
 11
 In determining the propriety of dismissal under Fed.R.Civ.P. 12(b)(6), the district court is bound by the same standard which binds this court on appeal. It must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Corcoran v. Chicago Park District, 875 F.2d 609, 611 (7th Cir.1989); Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1032-33 (7th Cir.1987). If it appears beyond doubt that plaintiffs can prove any set of facts consistent with the allegations in the complaint which would entitle them to relief, dismissal is inappropriate. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); Illinois Health Care Ass'n v. Illinois Dept. of Public Health, 879 F.2d 286, 288 (7th Cir.1989). They may not avoid dismissal, however, simply by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims. Sutliff, Inc. v. Donovan Companies, 727 F.2d 648, 654 (7th Cir.1984); see also, Gomez, 811 F.2d at 1033 (court not bound by plaintiffs' legal characterization of the facts); Strauss v. City of Chicago, 760 F.2d 765, 767-68 (7th Cir.1985) (absence of any facts to support plaintiff's claim renders allegations mere legal conclusions subject to dismissal).
 
 
 12
 If the district court found it difficult to apply this standard in the present case, we sympathize. It was an onerous task. The complaint lacks material factual allegations, contains a tedious repetition of legal conclusions, and improperly joins the plaintiffs' claims in a single action.
 
 III. ANALYSIS
 A. Sufficiency of the Allegations
 
 13
 To suggest that the factual allegations in plaintiffs' complaint were not "well-pled" is an understatement. While plaintiffs make clear in their original complaint what their claims are, they fail to identify the grounds upon which their claims are based.[1] This they must do, even under the liberal notice pleading of Rule 8(a). Conley, 355 U.S. at 47, 78 S.Ct. at 102. In place of particularized factual allegations, plaintiffs assault us with general statements of the law which were lifted verbatim from federal statutes, regulations and case law dealing with employment discrimination, i.e., "quid pro quo harassment," "hostile work environment," "unwelcome sexual advances," "age discrimination," "wrongful termination," "equal protection," "due process," and "conspiracy." See Sutliff, Inc., 727 F.2d at 654 (complaint which merely recites statutory language and related legalese but fails to allege minimal material factual allegations outlining violation of the law insufficient).
 
 
 14
 Apparently reading Fed.R.Civ.P. 10(c) as a license to plead their case by exhibit, plaintiffs attached an assortment of letters, newspaper articles, commentaries, cartoons and miscellaneous other exhibits to their complaint, leaving it to the court to extract the relevant facts. To the extent plaintiffs rely on this haphazard compilation to fill the void left in their complaint, their reliance is misplaced. The exhibits show that there were non-discriminatory reasons for terminating plaintiffs' employment; that plaintiffs were accorded a full-adversary pre-termination hearing; and that they were discharged on the basis of a hearing board's recommendation and, in Perkins' case, the decision of the President of the District, defendant George Dunne. It is difficult, if not impossible, to see how these facts, and those which follow, favor the plaintiffs' case.
 
 1. Perkins
 
 15
 According to the exhibits, Perkins attempted suicide on March 24, 1988, and was consequently charged with a violation of Department Rule 15.20 which prohibits officers from engaging in any activities, on or off duty, "which indicate instability of character or personality," and "give the appearance of impropriety." The hearing originally scheduled for April 6, 1988 was continued at Perkins' request, or on her behalf, until June 23, 1988.
 
 
 16
 In late April, 1988, the Chicago media featured defendant Dunne as the subject of a sex-for-jobs scandal.[2] Perkins' role in the scandal is unclear. While she apparently made a public disclosure of the fact that she and Dunne had, at some unidentified point in time, engaged in a sexual relationship, she later denied any connection between their relationship and her job with the Department.
 
 
 17
 A Hearing Board comprised of defendants Siragusa, Gabhart and Gaughan convened on June 23, 1988 to hear the charges stemming from the attempted suicide. At the conclusion of the evidence, the Board unanimously agreed that Perkins' conduct indicated instability of character, gave the appearance of impropriety, and "threaten[ed] in the future the safety of herself, her fellow officers, and the public." The Board recommended termination, and Dunne, as President of the District, made the final discharge decision.
 
 
 18
 On the basis of these "facts," Perkins concludes that she was the victim of "quid pro quo sexual harassment" and a "hostile work environment." She alleges that Silverstein and Dunne subjected her to "unwelcome sexual advances, unwelcome requests for sexual favors and other unwelcome verbal and physical conduct of a sexual nature," and that the defendants' conduct "substantially affected the terms, conditions, and privileges of [her] employment," but fails to identify any specific incidents of harassment, to tell us when these "unwelcome advances" occurred, or to identify what the "terms, conditions and privileges" of her employment were, or how they were affected.
 
 
 19
 In her Sec. 1983 claims, Perkins charges Silverstein and Dunne with violating the due process and equal protection clauses of the fourteenth amendment, but fails to identify any property or liberty interest in her employment or to allege any prior or subsequent history of disparate treatment. Her Secs. 1985 and 1986 claims are premised on an alleged conspiracy to deprive her of rights and privileges accorded her under the fourteenth amendment and Title VII, but again fail to identify any protected property or liberty interest in her employment or to show a meeting of the minds between the alleged coconspirators. We also note that to the extent these claims are premised on a violation of rights created by Title VII, they are in direct conflict with Great American Federal Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979). The pendent state due process allegations are also insufficient. Perkins cites no statute, rule or regulation which would entitle her to a hearing before the Commission in connection with her discharge, or to continued employment with the Department.
 
 2. Gaynor
 
 20
 In Gaynor's case, the exhibits show that he was the subject of at least five written reports between July 21, 1988 and August 20, 1988 in which his conduct or performance as a police officer was questioned by his superior officers, defendants Palacios, Lawrence and Quintos. The incident which ultimately led to Gaynor's termination occurred on August 28, 1988. While on duty with another officer, Gaynor engaged in a conversation in which he made several derogatory remarks about the Department and his superiors and stated that he would be willing to falsify information on a police report. Unknown to Gaynor, the radio in the squad car was "keyed up" and the conversation was broadcast over the airwaves, recorded at the station and was overheard by a supervisor, defendant Quintos. Gaynor was subsequently charged with violating Department Rule 14.9 which provides:
 
 
 21
 Any officer of the Department who shall in the performance of his/her official duties display reluctance to properly perform his/her assigned duties, or who act[s] in a manner tending to bring discredit upon themself or the Department, or who fails to assume responsibility or exercise diligence, intelligence, and interest in the pursuit of their duties, or whose actions or performance in a position, rank or assignment are below acceptable standards, may be deemed incompetent and shall be subject to dismissal from the Department.
 
 
 22
 (Emphasis added).
 
 
 23
 On September 16, 1988, a Formal Inquiry Board comprised of defendants Castans, Gabhart, and Connelly convened to hear the charges against Gaynor, and his defense thereto. The Board concluded on the basis of the evidence presented that Gaynor was guilty of violating Department Rules 14.9, 18.12 and 18.14,[3] and requested that he be terminated.
 
 
 24
 Gaynor alleges in his complaint that he was 56 years old "at the time of his employment"; that he was performing his duties as a police officer in a reasonably proficient manner;[4] and, that defendants Silverstein, Castans, Gabhart, Gaughan, Quintos, Palacios, and Lawrence initiated disciplinary proceedings against him as "a pretext to the discriminatory motive of age discrimination." He alleges that his "wrongful termination" and replacement by a "non-civil service temporary appointee office" constituted a violation of the ADEA. Gaynor's due process allegations are virtually identical to Perkins'. He challenges his termination under Sec. 1983 and unidentified state law, contending that he was deprived of a protected liberty and property interest in "completing his probationary period as a police officer and thereby obtaining full Civil Service status"; that he was "stigmatized and prevent[ed] from obtaining future employment"; and, that he was denied the opportunity to have the real reasons for his termination heard by the Commission. His claims under 42 U.S.C. Secs. 1985 and 1986 are premised on an alleged conspiracy among the defendants to knowingly deprive him of "rights and privileges" protected under the ADEA and the fourteenth amendment, and their failure to prevent that deprivation.
 
 
 25
 Gaynor's Secs. 1983, 1985, 1986 and pendent state claims are, in almost all respects, identical to those we found insufficient in Perkins' case. Gaynor fails to identify a protected property or liberty interest in his employment, to show a meeting of the minds between the alleged coconspirators, or to cite any statute, rule or regulation which would entitle him to a hearing before the Commission in connection with his discharge, or to continued employment with the Department. The substantive deficiencies in his ADEA allegations are too numerous to count. We need cite but one, Gaynor's failure to allege compliance with the administrative filing requirements of 29 U.S.C. Sec. 626(d), to find that dismissal of the ADEA claim and any claim premised thereon was warranted.
 
 
 26
 3. "Official Capacity"
 
 
 27
 To the extent plaintiffs seek damages against the defendants in their official capacities, their complaint is in effect an action against Cook County, a municipality. See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-05, 87 L.Ed.2d 114 (1985); Leahy v. Board of Trustees of Community College District No. 508, 912 F.2d 917, 922 (7th Cir.1990). To support such a claim, the plaintiffs must allege facts, which if true, would show that the defendants acted pursuant to a municipal policy or custom when they discharged the plaintiffs, and that such actions caused them to be deprived of a right protected by the Constitution. Graham, 473 U.S. at 166, 105 S.Ct. at 3105; Oklahoma City v. Tuttle, 471 U.S. 808, 817-18, 105 S.Ct. 2427, 2432-33, 85 L.Ed.2d 791 (1985); Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). They have done neither.
 
 B. The Title VII and ADEA Claims
 
 28
 In dismissing plaintiffs' Title VII and ADEA claims, the district court erroneously concluded that 42 U.S.C. Sec. 2000e-5(e), (f)(1) and 29 U.S.C. Sec. 626(d) were "jurisdictional prerequisites." They are not. Since Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) and Stearns v. Consolidated Management, Inc., 747 F.2d 1105, 1111 (7th Cir.1984), we have consistently held that the administrative filing requirements imposed under Title VII and the ADEA are not "jurisdictional prerequisites" which pose an absolute bar to suit, but rather "conditions precedent," similar to statutes of limitations, which are subject to equitable modification. Stark v. Dynascan Corp., 902 F.2d 549, 551 (7th Cir.1990) (ADEA); Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 126 (7th Cir.1989) (Title VII); Smith v. General Scanning, Inc., 876 F.2d 1315, 1317 (7th Cir.1989) (ADEA); Anooya v. Hilton Hotel Corp., 733 F.2d 48, 49 (7th Cir.1984) (Title VII).
 
 
 29
 In Gaynor's case, the distinction is immaterial. He neither alleges compliance with Sec. 626(d),[5] nor demonstrates an equitable basis for modifying the requirements set out therein. In an affidavit in response to the motion to dismiss, Gaynor attempts to argue that his completion of an EEOC intake questionnaire satisfies the requirements of Sec. 626(d). The district court disagreed, as do we. In Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 544 (7th Cir.1988), cert. denied, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989), we held that an intake questionnaire may, under certain circumstances, constitute a charge for purposes of the ADEA administrative filing requirements, i.e., where the information contained in the questionnaire was sufficient to constitute a charge, and both the claimant and EEOC indicated that they would treat the questionnaire as a charge. See also Philbin v. General Electric Capital Auto Lease, Inc., 929 F.2d 321, 324-25 (7th Cir.1991). Those circumstances are not present in this case. Gaynor acknowledges in his affidavit that he was informed by the EEOC at the time he completed the intake questionnaire that there was insufficient information to support his claim of retaliation and that no further action would be taken on the basis of the questionnaire.
 
 
 30
 The distinction, however, is far more significant in Perkins' case. 42 U.S.C. Sec. 2000e-5(e) and (f)(1) provide in relevant part as follows:
 
 
 31
 (e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter....
 
 
 32
 (f)(1).... If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section ... [or] has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [ ] by the person claiming to be aggrieved....
 
 
 33
 Perkins failed to allege compliance with either of these filing requirements in her original complaint. The omission was not inadvertent. Perkins did not have a right-to-sue letter when she filed her complaint, and had not named Dunne in the administrative charge which she filed with the EEOC. She attempted to cure both oversights in her response to the defendants' motion to dismiss.[6] She had, by that time, procured a right-to-sue letter from the EEOC which she attached to her response brief. With respect to defendant Dunne, she argued that Silverstein had been named in the EEOC charge and that notice to Silverstein constituted notice to Dunne since they were both administrators of the Forest Preserve District.
 
 
 34
 To the extent Perkins alleges any violation of Title VII by Dunne, the district court correctly concluded that her claims are barred by 42 U.S.C. Sec. 2000e-5(f)(1). Perkins does not dispute the fact that George Dunne was not named in the charge which she filed with the EEOC. Her public denial of any connection between her relationship with Dunne and her job with the Department suggests a reasonable explanation for that omission. Neither has she alleged any facts which warrant an exception to the general rule that a party not named in the EEOC charge cannot be sued under Title VII. See Schnellbaecher, 887 F.2d at 126-27; Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 905 (7th Cir.1981), cert. denied, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); LeBeau v. Libbey-Owens-Ford Co., 484 F.2d 798, 799 (7th Cir.1973).
 
 
 35
 The disposition of Perkins' Title VII claims against Silverstein is not quite so simple. While they may have been subject to dismissal at any time prior to Perkins' receipt of a right-to-sue letter, the receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint. Williams v. Washington Metro. Area Transit Authority, 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983); Fouche v. Jekyll Island-State Park Authority, 713 F.2d 1518, 1525 (11th Cir.1983); Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091, 1093 (4th Cir.1982); Pinkard v. Pullman-Standard, a Division of Pullman, Inc., 678 F.2d 1211, 1218 (5th Cir.1982) (per curiam), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); Clanton v. Orleans Parish School Board, 649 F.2d 1084, 1095 n. 13 (5th Cir.1981); Henderson v. Eastern Freight Ways, Inc., 460 F.2d 258, 260 (4th Cir.1972) (per curiam), cert. denied, 410 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973). Had the Title VII allegations been sufficient in all other respects, reversal would have been warranted and Perkins would have been afforded the opportunity to amend her complaint to show compliance with the statute. They were not. As our previous discussion clearly indicates, Perkins' Title VII claims were subject to dismissal for reasons totally unrelated to jurisdiction.
 
 C. The Motion to Amend
 
 36
 Although the district court clearly anticipated that the plaintiffs might attempt to amend their pleadings following dismissal, four months elapsed before Perkins filed her motion for leave to amend and supplement her portion of the complaint. The motion provided no explanation or excuse for the delay. The allegations of the proposed amended complaint mirror those of the first in several respects, expand the federal and state due process allegations to include specific citations to Illinois law and the Commission's Rules, and add a claim under the first amendment.
 
 
 37
 Citing the untimeliness of the amendment and its failure to cure deficiencies previously identified, the district court denied leave to amend. On appeal, Perkins contends that she had an absolute right to amend her complaint as a matter of course under Fed.R.Civ.P. 15(a), and that the district court erred in summarily denying her that right. We disagree.
 
 
 38
 While a plaintiff's right to amend as a matter of course survives a motion to dismiss, Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1111 (7th Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985), Perkins effectively used up that right when she made her first attempt to amend the complaint to include the right-to-sue letter. Any further amendment required leave of court under Fed.R.Civ.P. 15(a), the grant or denial of which was subject to the court's discretion. Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); Amendola v. Bayer, 907 F.2d 760, 764 (7th Cir.1990). Even if Perkins had retained a right to amend as a matter of course, that right was not absolute. Williams v. U.S. Postal Service, 873 F.2d 1069, 1072 (7th Cir.1989); Textor v. Board of Regents of Northern Illinois University, 711 F.2d 1387, 1391 and n. 1 (7th Cir.1983), Sarfaty v. Nowak, 369 F.2d 256, 259 (7th Cir.1966), cert. denied, 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 627 (1967). Under either circumstance, a district court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Glick v. Koenig, 766 F.2d 265, 268-69 (7th Cir.1985); Wakeen v. Hoffman House, Inc., 724 F.2d 1238, 1244 (7th Cir.1983); Textor, 711 F.2d at 1391 and n. 1; Jafree v. Barber, 689 F.2d 640, 644 (7th Cir.1982); Asher v. Harrington, 461 F.2d 890, 895 (7th Cir.1972). To hold otherwise would impose upon the defendants and the courts the arduous task of responding to an obviously futile gesture on the part of the plaintiffs. Rule 15(a) does not require the courts to undertake such an exercise. Glick, 766 F.2d at 268-69.
 
 
 39
 While the amended complaint is significantly longer than the first, it adds nothing of any substance. Perkins repeats her Title VII allegations against Dunne, ignoring the fact that she failed to name him in the EEOC charge. See Schnellbaecher, 887 F.2d at 126-27 (as a general rule a party not named in the EEOC charge cannot be sued under Title VII). Her Title VII allegations against Silverstein remain vague and conclusory. Her attempts to bolster her due process arguments with actual citations to Illinois law and the Commission's Rules ignore the express language of Ill.Rev.Stat. ch. 34, Sec. 1118 which gives the appointing officers or executive head of the Department the right to discharge a probationary employee without reference to the procedures provided for the removal, discharge or suspension of non-probationary classified service employees.[7] Under Illinois law and the Commission's Rules, the appointing officer may discharge a probationary employee, with the consent of the Commission, upon assigning in writing to the Commission the reasons therefor. Ill.Rev.Stat. ch. 34, Sec. 1114 and Commission Rule IX, Sec. 12. Perkins' contention on appeal that the Commission was required to consent to the reasons for the discharge is directly contradicted by Alberty v. Daniel, 25 Ill.App.3d 291, 323 N.E.2d 110 (1974) (Commission required to consent only to the discharge, not as to the reason). Perkins expands her Sec. 1983 claim to add allegations of a first amendment violation, but fails to supply us with anything more than conclusory legal allegations, or to explain why the court should allow her to assert an additional claim almost a year after the original complaint was filed. The allegations of a conspiracy in her Secs. 1985 and 1986 claims are totally unsupported by any facts. See Rodgers v. Lincoln Towing Service, Inc., 596 F.Supp. 13, 21 (N.D.Ill.1984), aff'd, 771 F.2d 194 (7th Cir.1985). As the district court correctly noted, there can be no cause of action under Sec. 1986 absent a viable Sec. 1985 claim. Williams v. St. Joseph Hospital, 629 F.2d 448, 452 (7th Cir.1980).
 
 
 40
 Granting leave to file an amended complaint which is so obviously deficient would indeed have been an exercise in futility, and could have potentially subjected plaintiffs and their counsel to Rule 11 sanctions. We will not require a district court to indulge in such futile gestures. Glick, 766 F.2d at 268-69.
 
 IV. CONCLUSION
 
 41
 The allegations of the original and amended complaint fail to state any claims upon which relief could be granted. The judgment of the district court dismissing plaintiffs' cause of action is, accordingly, AFFIRMED.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 The absence of any factual background is also evident in plaintiffs' appellate brief. In place of the statement of facts mandated by Fed.R.App.P. 28(a)(3), we find a general reference to the "pleadings and affidavits" contained in plaintiffs' appendix. We strongly disapprove of this tactic. See Skagen v. Sears, Roebuck & Co., 910 F.2d 1498, 1500 n. 2 (7th Cir.1990). It improperly shifts the plaintiffs' burden of pleading to the courts, and imposes upon us the time-consuming job of reconstructing the facts. In the present case, the facts with which we were provided prove far more beneficial to the defendants than the plaintiffs
 
 
 [2]
 The newspaper articles, commentaries and editorial cartoons which Perkins attached to the complaint referencing this "scandal," are not the type of documentary evidence or "written instrument[s]" which Fed.R.Civ.P. 10(c) intended to be incorporated into, and made a part of, the complaint. See generally, Wright & Miller, Federal Practice and Procedure: Civil 2d Sec. 1327, p. 763 and n. 7 (2d ed. 1990)
 
 
 [3]
 Department Rule 18.12 is neglect of duty. Rule 18.14 is inattention to duty
 
 
 [4]
 Gaynor alleges that "he met the reasonable proficiency standards for the performance of his duties as a police officer...." The exhibits, which he attached to the complaint, show otherwise. In determining the sufficiency of the complaint we must rely on the exhibits whenever the allegations of the complaint are materially inconsistent with those exhibits. See Foshee v. Daoust Construction Co., 185 F.2d 23, 25 (7th Cir.1950); Wright & Miller, Federal Practice and Procedure: Civil 2d Sec. 1327, pp. 766-67
 
 
 [5]
 29 U.S.C. Sec. 626(d) provides:
 No civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed....
 
 
 [6]
 As a general rule, a complaint may not be amended by briefs in opposition to a motion to dismiss. Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir.1989); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). In the present case, however, the district court appears to have deemed the exhibits attached to the plaintiffs' opposition brief to be a part of the complaint, and considered those exhibits in reviewing the sufficiency of the complaint
 
 
 [7]
 Section 1118 provides in pertinent part:
 Any officer or employee serving his or her probationary period ... may be discharged by the appointing officers or the executive head of the department, institution or office in which such officer or employee is then employed, without reference to the provisions of this section.