**Dagmar C. ADAMS, Plaintiff,**

v.

**SCHUYLER, ROCHE & ZWIRNER, P.C., Defendant.**

**No. 92 C 2857.**

United States District Court, N.D. Illinois, E.D.

Aug. 26, 1992.

Ernest Thomas Rossiello, Ernest T. Rossiello & Associates, Ellen Deborah Krengel, Ellen D. Krengel, Chicago, Ill., David Charles Adams, David Charles Adams, Highland Park, Ill., for plaintiff.

---

1. Because we have dismissed the complaint, we need not consider Unum's motion to strike Talamine's jury demand.

Glenn Douglas Newman, John G. Levi, Sidley & Austin, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendant Schuyler, Roche & Zwirner, P.C. ("Schuyler") has moved for summary judgment on plaintiff Dagmar C. Adams' Age Discrimination in Employment Act ("ADEA") complaint. Schuyler's argument is that Adams failed to file her charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of Schuyler's alleged unlawful employment practice, as required by 29 U.S.C. §§ 626(d), 633(b) (1988). We agree and, as set forth below, grant the motion for summary judgment.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### II. Factual Background

Adams was a secretary at Schuyler, a mid-sized law firm in Chicago and Evanston, Illinois. There is no dispute that on April 2, 1990, she was informed by Schuyler's personnel manager that she was being "fire[d]" (as Adams herself puts it in her affidavit), with her "last day [set] to be June 29, 1990." *Id.* As it turned out, May 3, 1990 was Adams' last day in Schuyler's office.

On October 30, 1990, Adams contends that she went to the Illinois Department of Human Rights ("IDHR") office in Chicago. She told an IDHR employee, Charmaine Hargrove, that she "intended to file an age and handicap discrimination charge against her employer." Hargrove logged Adams' name into the "walk-ins daily intake record," and Adams completed an intake questionnaire (copies of both documents are appended to Adams' Response). She also submitted a lengthy, "verified" (that is, notarized) version of events, styled "charges of discrimination." After receiving Adams' materials, Hargrove, according to Adams, told her that a case number could not be assigned that day, but that one would be assigned some time in the future. Around December 12, 1990, Adams received a letter from the IDHR informing her that her age discrimination "intake inquiry ... contains one or more issues that are not timely with IDHR but that are timely" with the Equal Employment Opportunity Commission ("EEOC"), and that the IDHR was "transmitting to EEOC for processing" pursuant to the current worksharing agreement.

Shortly after January 4, 1991, Adams received a letter from EEOC requesting more information. Adams went to the EEOC's Chicago office on January 31, 1991, and met with Dana Perl, an EEOC employee. Perl, according to Adams, told her that her file had been purged from both the IDHR and EEOC computers, and that no record of her claim existed. On February 1, 1991, Adams refiled her materials with the IDHR at its Chicago office. On April 16, 1991, and again on May 6, 1991, Adams met with IDHR employee Steven Cundiff, and discussed with him her allegations of age discrimination. On or about January 31, 1992, she received notice from the EEOC (addressed to "Mr. Adams") that it had "ceased its processing of the above referenced [ADEA] charge." Adams filed the instant lawsuit on April 29, 1992.

### III. Discussion

▮ Federal law requires that, in a deferral state like Illinois, Adams file a

charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 29 U.S.C. §§ 626(d), 633(b); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 449 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). The clock starts to run at the time of the alleged discriminatory act, not at the point at which the act's consequences come to the fore. *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Cada,* 920 F.2d at 451–53; *Mull v. Arco Durethene Plastics, Inc.,* 784 F.2d 284, 290 n. 8 (7th Cir.1986).

February 1, 1991, whether it was a "filing" or "refiling" date, is clearly beyond the 300–day administrative statute of limitations. We count 305 days between April 2, 1990 and February 1, 1991. The question that must be decided is whether there is any reason to treat Adams' October 30, 1990 visit to the IDHR office—clearly within the 300–day time span—as satisfaction of the statutory time bar.

The Seventh Circuit has held that in certain circumstances an intake questionnaire can be considered a charge for ADEA purposes. *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75 (7th Cir.1992); *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534 (7th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989); *see also Philbin v. General Elec. Capital Auto Lease, Inc.,* 929 F.2d 321 (7th Cir.1991) (Title VII charge). If Adams satisfies the test set forth in *Steffen* and *Early,* her completion of an intake questionnaire on October 30, 1990 would defeat Schuyler's motion for summary judgment.

In *Early,* the Seventh Circuit's most recent relevant opinion, the court stressed that an intake questionnaire is not a charge (and will not toll the administrative time limits) "where the [EEOC] made clear to the complainant that it was not treating the questionnaire as the charge, precisely because it didn't have enough information." *Early,* 959 F.2d at 80 (discussing holding in *Perkins v. Silverstein,* 939 F.2d 463, 470 (7th Cir.1991)). The EEOC here, by its aforementioned letter dated January 4, 1991, notified Adams that it had received her *complaint* of employment discrimination, but that the information she provided was "not sufficient for filing a *charge* of discrimination." (Emphasis added). "Additional information," the letter noted, "is needed before we can pursue this matter." *Id.* Finally, Adams was advised to "contact this office as soon as possible because a charge of employment discrimination must be filed within the time limitation imposed by law, generally within 180 to 300 days of the alleged discrimination." *Id.* However, Adams waited until January 31, 1991 to contact the office, a date beyond the 300–day filing period.

■ Adams' alternative argument that the time period should not begin to run until April 6, 1990, when she learned of Schuyler's rehiring of a secretary ten years her senior, is unpersuasive. We count 301 days between April 6, 1990 and February 1, 1991, still outside the "within 300 days" language in 29 U.S.C. § 626(d). Further, the Seventh Circuit has disapproved of "a plaintiff who invokes equitable tolling to suspend the statute of limitations" and then fails to "bring suit within a reasonable time" after the necessary information has been obtained. *Cada,* 920 F.2d at 453. Here, as in *Cada,* plenty of time remained in which to file the discrimination charge; Adams, like Cada, offers no excuse for the delay. *Id.* at 452. Insofar as statute of limitations serve important social functions, equitable doctrines like equitable tolling should not be invoked if the plaintiff "doesn't need [extra time]" and application of the doctrine would "depriv[e] the defendant of the protection of the statute of limitations." *Id.*

■ Similarly, we see no reason to toll the limitations period based on Adams' "detrimental reliance on the actions of the IDHR and EEOC." Response at 11. Adams filled out an intake questionnaire on October 30, 1990—she did not file a charge of discrimination. When the EEOC received her "communication concerning filing a complaint of employment discrimination," it explicitly notified her that she had not provided sufficient information equivalent to a charge, and that without addition-

al information, a charge could not be filed. Further, the EEOC warned Adams that she must contact the office immediately to avoid possible time limitations problems. Moreover, whatever information Adams got from the EEOC on January 31, 1991 is irrelevant, since that date itself is beyond the 300–day period, as noted above.

## IV.

In short, Schuyler's motion for summary judgment is granted because Adams did not file her ADEA charge in a timely fashion, and because there exists no basis for tolling the 300–day time period. It is so ordered.