**OPTIONS CENTER FOR INDEPEN-DENT LIVING, et al., Plaintiffs,**

v.

**G & V DEVELOPMENT CO., et al., Defendants**

No. 04–2262.

United States District Court,
C.D. Illinois.

July 15, 2005.

---

Jeffrey L. Taren, Kinoy Taren & Geraghty PC, Chicago, IL, for Plaintiffs.

Charles A. Valente, Krasnow Saunders Cornblath LLP, David M. Heilmann, Clausen Miller PC, Chicago, IL, Betty Y. Jang, Hinshaw & Culbertson, Champaign, IL, Edward A. Voci, Law Offices of Edward Voci, Oak Park, IL, Michael L. Dietchweiler, Labeau Dietchweiler & Berz, Kankakee, IL, for Defendants.

Stephen Kelley, Kankakee, IL, pro se.

## ORDER

BAKER, District Judge.

The plaintiffs, Options Center for Independent Living, South Suburban Housing Center, Inc., Paul Meyer, Betsy Young and Vernon Young, filed a *four-count complaint* against defendants G & V Development, Dave Verkler, Justin Goselin, Stephen Kelley ("Kelley"), Jeff Jarvis, Innovative Designs Custom Homes, Inc., Pommier Construction, Duchene Construction Co., Greg Leutloff and Earl Giroux, on November 23, 2004.

G & V Development, Dave Verkler and Justin Goselin filed a cross-claim for breach of contract and professional malpractice against Kelley on February 15, 2005. The cross-claim was filed pursuant to Federal Rule of Civil Procedure 13(g).[1] On March 11, 2005, Kelley filed a motion to dismiss Count II of the cross-claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Kelley seeks dismissal of Count II because losses of a strictly economic nature require adjudication in a contract action and cannot provide the basis for a valid tort claim. The cross plaintiffs argue that Count II is valid as it is predicated on the facts and claims of the original suit, which includes claims for noneconomic damages.

For the following reasons, the motion to dismiss Count II of the cross-claim is denied.

## BACKGROUND

The plaintiffs are housing organizations, disabled individuals, and testers who made multiple attempts during 2004 to view apartments owned, operated or designed by the defendants. Compl. p. 2–3, 5–7. The housing agencies scheduled these visits because they had received information that the housing did not comply with the Fair Housing Amendments Act ("the Act"), 42 U.S.C. § 3604, regarding accessibility for disabled individuals. Compl. p. 4–6, 11–12. The claim alleges that the individual plaintiffs were covered under the Act, that housing was not made available to them and that the defendants were liable for not having constructed the buildings in a manner that would provide accessibility to disabled persons. Compl. p. 10–12. They seek damages for the disabled individuals' inability to rent or access the defendants' housing, the community's deprivation of a diverse group of residents, and the time spent by the plaintiff agencies in litigating these matters, which

---

1. Federal Rule of Civil Procedure 13(g) allows "[a] pleading [to] state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject mat- ter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." Fed. R.Civ.P. 13(g).

detracted from their assistance of other clients.

The cross-claim alleges that the cross plaintiffs contracted with Kelley for architectural services for a multi-family housing structure, and they began construction according to Kelley's plans. Cross-cl, p. 2. In September 2004, Kelley informed the cross plaintiffs that his plans did not adhere to the Act's Technical Requirements; however, at that time, construction was almost complete. Cross-cl. p. 2.

The cross-claim contains two counts: Count I, which alleges a breach of contract pertaining to Kelley's obligation to design the housing structure in compliance with the law; Cross-cl. p. 3; and Count II, which alleges professional malpractice for Kelley's failure to abide by the Act's Technical Requirements or to exercise proper care as a reasonably competent architect. Cross-cl. p. 4. The cross plaintiffs seek indemnity from Kelley to the extent they may be liable to the plaintiffs under the original complaint, as well as attorney's fees, costs of equitable relief or costs of any additional relief that might be assigned. Cross-cl. p. 5.

## ANALYSIS

In ruling on a motion to dismiss, the court must accept the well-pled allegations of the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). Dismissal should be granted only if it appears that the plaintiff cannot prove a set of facts supporting his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Kelley claims that Count II of the cross-claim is barred by Illinois law, which provides that purely economic damages are not recoverable in tort. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman Mfg. Co.*, 61 Ill.Dec. 746, 435 N.E.2d at 449. Professional malpractice is considered a tort claim. *2314*

*Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346, 350–52 (1990).

The cross plaintiffs argue in their reply that Count II of their cross-claim seeks a recovery for non-economic injuries as well as economic loss, because they may be held liable to the plaintiffs; thus, the cross plaintiffs seek indemnity for the plaintiffs' claims in the original action for both non-economic injury and economic loss.

In *2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346, the Illinois Supreme Court applied the Moorman doctrine to a situation almost analogous to this case. In *Lincoln Park*, the court disallowed a professional negligence claim against an architect because it violated the rule barring tort claims for strictly economic losses. *Lincoln Park*, 144 Ill.Dec. 227, 555 N.E.2d at 350–51. In support of his motion to dismiss Count II of the cross-claim, Kelley argues that the holding in *Lincoln Park* controls, barring the cross plaintiffs' negligence claim because their loss is strictly economic. However, *Lincoln Park* pertained to a complaint, 144 Ill.Dec. 227, 555 N.E.2d at 350–51, whereas Kelley's motion pertains to a cross-claim. That distinction is critical.

Rule 13(g) of the Federal Rules of Civil Procedure states in relevant part that a "cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." Fed.R.Civ.P. 13(g). The plain meaning of this sentence indicates that a cross-claim can be predicated on the cross defendants' liability for the initial claim.

The court must view the cross-claim in reference to the original claim. The Supreme Court has sought a "logical relationship" between a complaint and a counterclaim. *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926) (pertaining to the issue of ancillary jurisdiction). The analysis in *Moore* resulted in an expansion of jurisdiction due to the relationship between the counterclaim and the original claim. *Miller v. Carson*, 515 F.Supp.

1375, 1377 (M.D.Fl.1981) (*citing Moore,* 270 U.S. at 610, 46 S.Ct. 367). Similarly, Kelley's motion to dismiss requires an examination of the relationship between the cross-claim and the original claim.

The Seventh Circuit Court of Appeals has implied that the terms of agreements for indemnity based on contractual or quasi-contractual issues should be bargained for in the initial contract. *See In re Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978,* 699 F.2d 909, 915 (7th Cir.1983). However, in *Amoco Cadiz,* there was an alternative claim for contribution which the Seventh Circuit found more difficult to conceptualize in contractual terms. *In re Oil Spill by Amoco Cadiz,* 699 F.2d at 915. The cross-claim at bar seeks indemnity but also seeks attorney's fees and other remedies, including provisions for future equitable relief that might be assigned. Count I of the cross-claim is based on a contract issue and Count II arises as a result of the initial transaction, but both counts pertain to the liability asserted by the plaintiffs in the original action. Similar to the claim in *Amoco Cadiz,* the cross plaintiffs seek indemnity as well as other remedies beyond those available on a contract claim.

Kelley's contention regarding the purely economic nature of Count II of the cross-claim is unavailing because of the nature of the plaintiffs' claims. The plaintiffs in the original action seek damages for the disabled individuals' inability to rent or access the defendants' housing, the community's deprivation of a diverse group of residents, and time spent by the plaintiff agencies in litigating these matters.

The claims in the original complaint are not simply economic losses and thus are not barred in the cross claim. The original complaint validly asserts claims beyond economic loss, as provided by 42 U.S.C. § 3613(c). The plaintiffs' claims require adjudication based upon both economic and non-economic injury. The cross-claim does not seek separate damages in tort for economic loss, but rather is predicated on the original claim and the potential liability that the cross plaintiffs face as a result of that claim.

The original claim provides the basis for the cross plaintiffs' tort claim; consequently, Count II of the cross-claim addresses issues of non-economic injury in addition to economic loss. Thus, Kelley's motion to dismiss the cross-claim is denied.

## CONCLUSION

For the foregoing reasons, the court denies Kelley's motion to dismiss Count II of the cross-claim [# 28]. Kelley shall file an answer to Count II of the cross-claim within fourteen (14) days of the date of this order.